IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DARIN KAUFMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-120-RJD |
| | ) | |
| MS. BOWERS and T. RAY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Darin Kaufman, an inmate in the custody of the United States Bureau of Prisons ("BOP"), brings this action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff alleges Defendants interfered with his access to legal mail while he was incarcerated at Greenville Federal Correctional Institution ("FCI Greenville"). The Court conducted a threshold review of Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A and he was allowed to proceed on the following claim:

> Count One: First Amendment interference with legal mail claim against Defendants Bowers and Ray for reading and then denying Plaintiff access to his legal mail.

Defendants have filed a Motion to Dismiss (Doc. 40) and Motion for Summary Judgment (Doc. 41) that are now before the Court. Plaintiff has responded to the motions (Docs. 47 and 48).

In their motion to dismiss, Defendants assert that the *Bivens* remedy is not available for a violation of the First Amendment at issue in this case in light of *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Defendants also argue, however, that the Court may not need to address the *Abbasi* issue

because the mail handling procedure Plaintiff complains of is a reasonable restriction that reflects an effort to maintain prison security. Defendants also assert the mail handling protocols have not served to deny Plaintiff access to the courts.

Based on the following, Defendants' Motion to Dismiss (Doc. 40) is **GRANTED IN PART AND DENIED IN PART**, and Defendants' Motion for Summary Judgment (Doc. 41) is **FOUND AS MOOT**. This case is **DISMISSED** with prejudice.

### Factual Background

Plaintiff's complaint arises from incidents that occurred while he was incarcerated at FCI Greenville. According to Plaintiff's Amended Complaint (Doc. 37), on October 16, 2019, Plaintiff spoke with Defendant Case Manager Bowers and asked her for access to legal mail that had been withheld from Plaintiff so he could work on his appeal with his attorney. Plaintiff alleges that Bowers told him he could not have access to his legal mail because it references his conviction and is a "liability concern." According to Plaintiff, he filed an informal complaint on a BP-8 form that did not receive any response.

Plaintiff also alleges that on January 11, 2020, he was called to the mailroom and Defendant Ray opened an envelope from his attorney regarding his appeal. Plaintiff alleges Ray read his legal documents and then called and spoke with Defendant Bowers and then spoke with the case manager, Mr. Harken. Defendant Ray told Plaintiff that he would not be allowed to possess his legal mail and they were going to treat it like a presentence investigation report ("PSI"). Plaintiff then spoke with Harken and complained that whenever Plaintiff received legal mail from his attorney regarding his appeal FCI Greenville staff would open and read it, and then refuse to let Plaintiff possess it. Harken advised Plaintiff that his legal mail would be treated as if it were a

PSI. Harken communicated this to Defendant Ray. Harken told Plaintiff this mail would be stored in his central file for his review, but Plaintiff asserts he is not allowed to take notes or copies of the materials. Plaintiff further alleges that his requests for time to review his central file have not been fulfilled.

On March 13, 2020, Plaintiff was again called to the mail room and Defendant Ray had him sign for a piece of legal mail from the Southern District of Illinois. Defendant Ray asked Plaintiff to sign the form indicating receipt of the legal mail, and then Ray opened the mail and read it. Plaintiff questioned Ray as to why he was reading Plaintiff's mail, and Ray told Plaintiff that he knew why and the matter had already been discussed.

## Legal Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted. In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all possible inferences in favor of the plaintiff. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quotations omitted). A plaintiff need not set out all relevant facts or recite the law in his or her complaint; however, the plaintiff must provide a short and plain statement that shows that he or she is entitled to relief. *See* FED. R. CIV. P. 8(a)(2). Thus, a complaint will not be dismissed if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## Discussion

***First Amendment Violation***

The Supreme Court has held, "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). In this vein, the Supreme Court recognizes that prisoners have protected First Amendment interests in both sending and receiving mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987)). An inmate's legal mail is entitled to greater protections because of the potential for interference with his right of access to the courts. *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005) (citation omitted). As such, when an inmate receives mail that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside the inmate's presence. *Id.* at 686 (citations omitted). Despite these protections on an inmate's mail services, prison security and rehabilitation are legitimate interests that justify reasonable restrictions on prisoner's correspondence. *Koutnik v. Brown*, 456 F.3d 777, 781 (7th Cir. 2006). In determining the reasonableness of a restriction, the court must consider: (1) whether there is a "valid, rational" connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources; and (4) whether "ready alternatives" to the restriction exist. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

Defendants assert Plaintiff fails to state a First Amendment violation insofar as the mail protocols described by Plaintiff did not deny Plaintiff access to the courts. Defendants also assert Plaintiff has failed to demonstrate that the procedures complained of were an unreasonable

restriction on his First Amendment rights.

Defendants ask the Court to make a determination that the restrictions complained of are reasonable. In support of this argument, Defendants contend their actions were in compliance with particular BOP Program Statements that set forth BOP policies for the opening and inspection of mail. Defendants also assert that "[i]f a court filing contains information that could subject an inmate to reprisals … it is not unreasonable to store that material in the inmate's central file rather than his cell, with opportunity to review it." Defendants fail to support this conclusion with any evidence, which is necessary for the Court to find in Defendants' favor. However, if they had provided evidentiary support, their motion to dismiss would be improper, as the Court generally cannot consider materials beyond the complaint in deciding a motion to dismiss. *See Olson v. Bemis*, 800 F.3d 296, 305 (7th Cir. 2015) (A court ruling on a motion to dismiss can rely on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice). This highlights the peculiar nature of Defendants' request for dismissal on this basis. A determination that the procedures complained of were "reasonable restrictions" is a fact intensive query that the Court finds cannot be accomplished at this stage in the litigation. *See Ortiz v. Downey*, 561 F.3d 664, 669-70 (7th Cir. 2009). Further, the Court notes that compliance with a BOP policy is neither evidence of a constitutional violation or the reasonableness of a restriction. The Court finds it is also improper to determine whether Plaintiff was limited in his access to the courts due to Defendants' alleged conduct without the benefit of discovery.

**Bivens Remedy**

Defendants contend that *Bivens* should not be extended to Plaintiff's First Amendment

claim in light of the Supreme Court decision in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017).

Through 42 U.S.C. § 1983, Congress created a damages remedy for plaintiffs whose constitutional rights were violated by state officials. *See id.* at 1848. The statute was silent, however, regarding actions by federal officials. *Id*. Nevertheless, in 1971, the Supreme Court recognized an implied damages action against federal officers who violated the Fourth Amendment prohibition against unreasonable searches and seizures. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397 (1971). Over the next decade, the Supreme Court extended *Bivens* type remedies to Fifth Amendment gender discrimination and Eighth Amendment deliberate indifference claims. *See Davis v. Passman*, 442 U.S. 228, 248 (1979); *Carlson v. Green*, 446 U.S. 14, 20 (1980).

Since that time, however, the Supreme Court has grown increasingly hesitant to expand the number of implied actions under *Bivens*, and such expansion is now "disfavored." *Abbasi*, 137 S.Ct. at 1857. The Supreme Court recently established a two-part test for determining whether a *Bivens* claim could proceed. First, the district court must determine whether the case presents a "new context" different from previously recognized *Bivens* remedies. *Id*. at 1859. Second, if it does present a new context, the Court must then analyze whether "special factors counsel hesitation" in expanding *Bivens* in the absence of congressional action. *Id*. at 1857.

### *New Context*

A case raises a new context where it differs "in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court[.]" *Abbasi*, 137 S.Ct. at 1859. In *Abbasi*, the Court gave the following guidance in making the determination:

A case might differ in a meaningful way because of the rank of the officers involved; the

> constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1859-60.

Here, although some Supreme Court cases assumed a *Bivens* remedy was available for First Amendment violations, the Court never specifically recognized such a claim. *See Reichle v. Howards*, 566 U.S. 658, 663 n. 4 (2012); *Ashcroft v. Iqbal*, 446 U.S. 662, 675 (2009). Further, a First Amendment claim bears little resemblance to the types of claims previously recognized by the Supreme Court. *See, e.g., Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397 (1971) (recognizing Fourth Amendment unreasonable search and seizure claims); *Davis v. Passman*, 442 U.S. 228, 248 (1979) (recognizing Fifth Amendment gender discrimination claims); *Carlson v. Green*, 446 U.S. 14, 20 (1980) (recognizing Eighth Amendment deliberate indifference claims).

Since *Abbasi* was decided, various courts, including this one, analyzing this prong of the test have repeatedly found that First Amendment claims raise a new context. *See, e.g., Redmon-El v. Sullivan*, Case No. 20 C 50128, 2021 WL 4477814, at *2 (N.D. Ill. Sept. 30, 2021) (finding the plaintiff's First Amendment retaliation claim differs in "a meaningful way" from *Bivens*, *Davis*, and *Carlson*, and thus arises in a new context); *Keller v. Walton*, No. 3:16-CV-0565-JPG-GCS, 2019 WL 1513498, at *2 (S.D. Ill. Apr. 8, 2019) (finding that First Amendment retaliation claim qualifies as a new context); *Harris v. Dunbar*, No. 2:17-CV-00536-WTL-DLP, 2018 WL 3574736, at *3 (S.D. Ind. July 25, 2018) (finding that First Amendment interference with mail claim qualifies as a new context); *Stratmon v. Morris*, No. 1:12-CV-01837-DAD-SAB (PC), 2018 WL 3388406, at *3 (E.D. Cal. July 10, 2018) (finding confiscation and interference with mail

under the First Amendment as presenting a new context under *Bivens*). *See also Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) (noting that First Amendment retaliation claims raise a new context under *Bivens*); *Howard v. Lackey*, No. 7:16-129-KKC, 2018 WL 1211113, at *3 (E.D. Ky. March 7, 2018) (finding First Amendment retaliation claim based on failure to receive single piece of mail as raising a new *Bivens* context).

In his supplemental response to Defendants' motion, Plaintiff asserts that his claim presents issues of due process and access to the courts and should be viewed as a Fifth Amendment claim rather than a First Amendment claim. The Court has reviewed Plaintiff's Amended Complaint (Doc. 37) and the Court's screening order (Doc. 24) and finds Plaintiff's claim was properly characterized as a First Amendment mail interference claim rather than a Fifth Amendment due process claim[1]. As such, the Court need not discuss this argument further.

***Special Factors***

If a case involves a new context, the Court must next determine whether "special factors counsel hesitation" in extending a *Bivens* remedy. *Abbasi*, 137 S.Ct. at 1857 (citing *Carlson*, 446 U.S. at 18). Whether special factors urge expansion of this remedy into a new context depends on "whether the Judiciary is well-suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," and whether "there is an alternative remedial structure present in a certain case." *Id.* at 1858.

With regard to "special factors," Defendants assert the issues here present "line-drawing"

---

[1] If Plaintiff believed the Court mischaracterized his claim he should have filed a motion to reconsider the screening order. Moreover, even if the Court found Plaintiff had stated a Fifth Amendment due process claim, such a claim is unlike those cases in which the Supreme Court found a *Bivens*-type remedy was available. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397 (1971); *Davis v. Passman*, 442 U.S. 228, 248 (1979); and *Carlson v. Green*, 446 U.S. 14, 20 (1980).

difficulties. In support of this argument, Defendants seem to analogize this case to *Wilkie v. Robbins*, wherein the Supreme Court barred an extension of a *Bivens* remedy for retaliation finding it would "invite claims in every sphere of legitimate governmental action affecting property interests." 551 U.S. 537, 561 (2007). In *Wilkie*, which involved a Fifth Amendment claim by a landowner who alleged that federal employees had engaged in a campaign of harassment and intimidation to induce him to give an easement over his property, the Court found that although there were several avenues of judicial and administrative redress for much of the wrongdoing alleged by the plaintiff, it was not enough to resolve the matter. *Wilkie*, 551 U.S. at 555-56. Thus, the Court went on to consider whether "special factors" counseled against recognizing an implied right of action. On this issue, the Court found that "[a] judicial standard to identify illegitimate pressure going beyond legitimately hard bargaining would be endlessly knotty to work out, and a general provision for tortlike liability when Government employees are unduly zealous in pressing a governmental interest affecting property would invite an onslaught of *Bivens* actions." *Id.* at 562. As such, the Court found *Bivens* could not be extended to the circumstances presented in *Wilkie* and remarked that "any damages remedy for actions by Government employees who push too hard for the Government's benefit may come better, if at all, through legislation." *Id.*

The Court finds the circumstances presented in this instance are not akin to those presented in *Wilkie* as the claims are quite distinct and there are remedies available to adequately address Plaintiff's claims.

The Supreme Court has explained that the existence of an alternative remedial structure, alone, may limit the court's power to infer a new *Bivens* cause of action because "the alternative

process may convincingly caution the Judiciary against 'providing a new and freestanding remedy in damages.'" *Abbasi*, 137 S.Ct. at 1858.

Alternative remedial structures can take many forms, including administrative, statutory, equitable and state law remedies. See *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Muhammad v. Gehrke*, No. 2:15-CV- 00334-WTL-MJD, 2018 WL 1334936 * 4 (S.D. Ind. Mar. 15, 2018) (noting that defendants had administrative remedies available to address first amendment retaliation claims for filing grievances). Here, Plaintiff had the administrative remedy process available at his institution, as evidenced by his assertions that there is a prisoner grievance procedure at his institution, and he presented facts related to his complaint via the prisoner grievance procedure. Accordingly, this Court concludes that Plaintiff did have alternative remedies to address his claims.

Also in this instance, prior legislative action should cause the court hesitation in expanding *Bivens*. *See Abbasi*, 137 S.Ct. at 1865. Congress enacted the Prison Litigation Reform Act ("PLRA") after the Supreme Court's early decisions expanding *Bivens*. The PLRA made substantial changes to how prisoner abuse claims could be brought in federal court. *Id*. The fact that Congress overhauled the process, but chose not to provide damage remedies, suggests Congress did not see the necessity of such a remedy to address constitutional violations in prisoner cases.

Finally, the financial burden on federal agencies resulting from litigation counsels against any *Bivens* expansion. The costs to the government and individual government employees in defending against such suits is significant. Congress recognized this when it enacted the PLRA with the express purpose of reducing costs related to frivolous lawsuits by prisoners. *See*

*Woodford v. Ngo*, 548 U.S. 81, 83 (2006). As noted previously, Congress balanced the costs of defending such litigation against the need to protect prisoners' rights through damages. In making this balancing assessment, Congress specifically chose not to provide a damages remedy. Thus, extending *Bivens* liability to Plaintiff's First Amendment claims would upset that balance and encroach on the province of the legislative branch, who is in a better position to balance and make determinations about such policy concerns. See *Abbasi* 137 S.Ct. at 1857.

For these reasons, the Court finds the special factors do not favor expanding the *Bivens* remedy.

## Conclusion

Based on the foregoing, Defendants' Motion to Dismiss (Doc. 40) is **GRANTED IN PART AND DENIED IN PART**. This matter is **DISMISSED** with prejudice for failure to state a claim for relief because the claim at issue represents an unauthorized expansion of the *Bivens* remedy post-*Abbasi*. The Clerk of Court is directed to enter judgment consistent with this Order and close the case.

In light of this decision, Defendants' Motion for Summary Judgment on the issue of exhaustion of administrative remedies (Doc. 41) is **FOUND AS MOOT**.

**IT IS SO ORDERED.**

**DATED: November 4, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**